# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 3:17-cr-00164 |
| | ) | CHIEF JUDGE CRENSHAW |
| GERSON SERRANO-RAMIREZ, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The Court makes the following rulings on two pending motions in this case.

I. <u>Motion to Exclude References to Gang Activity and Affiliation in Government's Case in Chief</u>

Defendant moves to exclude any reference to his alleged gang activities as irrelevant under Federal Rule of Evidence 401. Defendant contends that there is nothing regarding his alleged gang activities that makes any fact more or less probable at trial. (Doc. No. 66 at 1.) Defendant also contends that evidence of his alleged gang activity would be more prejudicial than probative under Federal Rules of Evidence 403 and 404. Under Rule 403, Defendant argues that "today's climate regarding gang activity in the media and in society" dictates that evidence that Defendant is a member of the gang MS-13 must be excluded. (<u>Id</u>. at 2.) Defendant further argues that membership in a criminal gang would not be sufficiently probative of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" under Rule 404(b)(2) to outweigh that prejudice. (<u>Id</u>.) In sum, Defendant argues that there insufficient connection between the allegation that he is a member of MS-13 and the alleged criminal conduct in the Superseding Indictment to risk the harm such references might cause him. (<u>Id</u>.)

The Government responds that evidence of Defendant's MS-13 gang affiliation is directly relevant to the charge that he tampered with a witness as alleged in Count Three of the Superseding Indictment. (Doc. No. 81 at 4.) The Government maintains that Defendant assaulted a victim ("Victim A") because of Defendant's belief that Victim A was cooperating with law enforcement against him and his MS-13 gang, and thus Defendant's MS-13 gang affiliation makes a fact more or less probable than it would be without the evidence and is a fact of consequence in determining whether the defendant is guilty of tampering with the victim. (Id.) The Government further argues that any prejudicial effect is outweighed by the central nature of this evidence to the Government's case and can be cured by a cautionary instruction at trial. (Id. at 5.) Finally, the Government contends that evidence of Defendant's MS-13 gang affiliation is admissible because it establishes motive under Rule 404(b)(2).

Under Federal Rule of Evidence 401, evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. However, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." F.R.E. 403. Evidence of crimes, wrongs, or "other acts" is generally inadmissible, but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," F.R.E. 404(b)(2), as long as it is also (1) sufficient and (2) not outweighed by its prejudicial effect. United States v. Allen, 619 F.3d 518, 523 (6th Cir. 2010).

"Trial courts must treat evidence of gang affiliation with care since most jurors are likely to look unfavorably upon a defendant's membership in a street gang." United States v. Tolbert, 8

F. App'x 372, 378 (6th Cir. 2001). Evidence of gang affiliation is inadmissible if, standing alone, there is no connection between it and the charged offense. United States v. Ford, 761 F.3d 641, 649-50 (6th Cir. 2014) (citing United States v. Anderson, 333 F. App'x 17, 24 (6th Cir. 2009)); see also United States v. Newsom, 452 F.3d 593, 602-04 (6th Cir. 2006) (holding that, where the district court had allowed the prosecution to cross-examine the defendant as to his tattoos "in great detail," references to a gang, "thug life," and "live and die for" a bag of money were not relevant when the sole charge was being a felon in possession of a firearm); United States v. Hendrix, 52 F.3d 326 (Table), No. 94-1404, 1995 WL 218472, at *3 (6th Cir. Apr. 12, 1995) (holding photo in array with gang signs was irrelevant because there was no connection between the depictions in the photo and the defendant's involvement in drug activity).

That being said, the Court of Appeals for the Sixth Circuit has held that, subject to balancing the probative value of such evidence against its prejudicial effect, evidence of gang affiliation can be admissible to establish the defendant's opportunity to commit a crime. United States v. Jobson, 102 F.3d 214, 221 (6th Cir. 1996) (holding that the defendant's gang membership would make it easier and more likely for him to have access to an assault refile and thus, possess the gun recovered). The Sixth Circuit has also held that gang affiliation is admissible where the interrelationship between people is a central issue in the case. Ford, 761 F.3d at 649 (6th Cir. 2014). See also United States v. Gibbs, 182 F.3d 408, 430 (6th Cir. 1999) (holding that t-shirts found in the defendant's bedroom that contained gang references and violent language were relevant and admissible because the Government's theory was that drug dealers who were members of the gang were in the charged conspiracy). Finally, and on a more basic level, the Court of Appeals has on occasion noted approvingly the admission of evidence of gang membership

where it simply "helped to explain why [the defendant] did what he did." United States v. Mooney, No. 03-6050, 2005 WL 8159085, at *5 (6th Cir. Jan. 12, 2005).

Most recently, the Sixth Circuit visited this issue in United States v. Woodley, 727 F. App'x 136, 140 (6th Cir. 2018). In Woodley, there was an alleged shooting. The defendant was, in the end, charged with being a felon in knowing possession of ammunition on the date of the shooting. Id. at 139. The district court admitted gang-related evidence for the purpose of demonstrating Defendant's motive for the shooting. The Court of Appeals found no abuse of discretion on the ground that the "gang affiliation was probative of the deteriorating relationship between [the defendant and the shooting victim], and furthered the government's theory that this incident with [the defendant], where he confronted [the shooting victim] about allegedly speaking to a member of another gang, initiated a shift in the relationship and contributed to [the defendant's] motive for shooting [the victim]." Id. at 140. In making this determination, the Court specifically cited that a key factor was testimony from the victim about a conversation between the defendant and the victim regarding gang affiliation that "sparked a disagreement between the two." Id.

The Government represents that the theory of the case against Defendant on Count Three is as follows. On July 25, 2017, Defendant and Victim A were in Defendant's residence. Victim A told Defendant that his gang and drug activity at a local nightclub was affecting the nightclub's business. Defendant became upset with Victim A and told him that he could not tell him or his gang how to conduct their business. Defendant then accused Victim A of cooperating with law enforcement about the gang's activities. Defendant physically assaulted Victim A by pointing a rifle at Victim A, striking him with the rifle, choking him with the strap of a rifle, spraying bleach in his eyes, and damaging one of his fingers. According to the Government, Defendant committed these acts because he believed they would prevent Victim A from cooperating with law

4

enforcement about the gang's activities. Eventually the assault ended, Defendant allowed Victim A to leave the residence, Victim A immediately sought medical assistance, and Victim A subsequently informed law enforcement of the assault.

On November 16, 2017, Defendant was indicted. (Doc. No. 29.) A grand jury charged the defendant with being an alien in possession of a firearm (Count One); being an alien unlawfully present in the United States (Count Two); witness tampering (Count Three); distributing and possessing with the intent to distribute cocaine (Count Four); brandishing a firearm during a drug trafficking crime and a crime of violence (Count Five); possessing cocaine with the intent to distribute (Count Six); possessing a firearm during a drug trafficking crime (Count Seven); maintaining drug-involved premises (Count Eight); and possessing a firearm during a drug trafficking crime (Count Nine). (See Doc. No. 29.) Count Three expressly alleges that Defendant's purpose was "to hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission and possible commission of a federal offense, including information about drug trafficking . . . and the criminal racketeering activity of the Mara Salvatrucha street gang, also known as 'MS-13,' and its sub-unit and clique known as the Thompson Place Locos Salvatrucha or 'TPLS. . . .'" (Id. at 2.)

Understanding why Defendant "did what he did" is at the heart of the witness tampering charge that comprises Count Three. Put simply, the Government charged Defendant with Count Three because it believes that Victim A confronted Defendant about the effect of his gang-based drug distribution activities and Defendant took him for an informant. As discussed above, evidence of Defendant's gang affiliation is relevant to understanding the "interrelationship between people" and a party's motivation. Therefore, in this case such evidence is relevant to the relationship between Defendant and Victim A and the motive for Defendant's alleged attack on Victim A. As

in Woodley, the evidence suggests a scenario in which the Defendant and the alleged victim had a specific conversation involving gang affiliation that led to a violent disagreement. Without evidence of Defendant's alleged involvement with MS-13, the Government's theory of Count Three would make little sense and Defendant's conduct would amount to no more than an unexplained, spontaneous gratuitous beating. While evidence of Defendant's gang membership may be somewhat prejudicial, that can be controlled through a limiting jury instruction. The Government's evidence (i.e., the direct testimony of Victim A and corroborative photographs) is sufficient, is probative of the deteriorating relationship between Defendant and Victim A, and helps to explain the purported motive for Defendant's assault upon Victim A. See Woodley, 727 F. App'x at 140; see also, e.g., United States v. Johnson, 256 F. Supp. 3d 755, 760 (M.D. Tenn. 2017) (declining to strike allegations about gang membership from indictment as prejudicial because the Government asserted the proof would show relevance with the charged crimes). To avoid undue prejudice to Defendant that might develop, the Court will give a limiting instruction after the testimony of witnesses concerning Defendant's gang membership. See United States v. Ray, 549 F. App'x 428, 434 (6th Cir. 2013) (noting approving that "the judge provided a limiting instruction to the jury to mitigate any possible unfair prejudice"); Williams, 158 F. App'x at 653-54 (approving use of limiting instruction to limit prejudicial effect of evidence of defendant's gang membership).

Accordingly, Defendant's Motion to Exclude References to Gang Activity and Affiliation in Government's Case-in-Chief (Doc. No. 81) will be denied.

II.     Motion to Sever Offenses

Defendant moves under Federal Rules of Criminal Procedure 8 and 14 to sever the case against him into three trials – one on Counts One, Six, Seven, and Nine; another on Counts Three,

Four, and Five, and a third trial on Counts Two and Eight. Defendant's primary rationale is that the first group of counts concern events that took place on August 8, 2017 (assault, weapons possession, drug dealing), the second group concerns events that took place on July 25, 2017 (violent witness tampering, drug dealing, weapons possession) and the third group contains conduct that took place between June, July and August 2017 (unlawful presence by an alien, maintaining drug-involved premises). Defendant argues that the events that underlie these charges are impermissibly linked and that he will be unfairly prejudiced by the "spillover" of evidence advanced to prove them. (Doc. No. 75 at 6-9.) Defendant is particularly offended by the inclusion of Count Eight - maintaining drug-involved premises – contending that the Government included it in the Superseding Indictment "for the sole purpose of circumventing" the relevant federal rules. (Doc. No. 75 at 6.)

The Government responds that, aside from the unlawful presence of an alien charge in Count Two, the charged offenses all revolve around Defendant's ongoing core criminal enterprise – namely, possession with intent to distribute drugs, actual drug distribution, possession of firearms to protect drug distribution, and acts of violence to further drug distribution and his gang's drug distribution (including witness tampering). (Doc. No. 80 at 4-5.) In other words, the Government contends that the dates of the actual offenses (although not that far apart) are less important, and what is more important is the Defendant's pattern of charged conduct and the common scheme that runs throughout the alleged offenses. (Id. at 5.)

Federal Rule of Criminal Procedure 8(a) permits joinder of two or more offenses "if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a); United States v. Hang Le-Thy Tran, 433 F.3d 472, 477 (6th Cir. 2006). The Court "may,

7

to the extent it is consistent with due process principles, construe the Rule broadly "to promote the goals of trial convenience and judicial efficiency." United States v. Graham, 275 F.3d 490, 512 (6th Cir. 2001) (quoting United States v. Wirsing, 719 F.2d 859, 862 (6th Cir. 1983)); United States v. Swift, 809 F.2d 320, 322 (6th Cir. 1987) (noting that "the predominant consideration is whether joinder would serve the goals of trial economy and convenience"); see also United States v. Kinslow, 860 F.2d 963, 966 (9th Cir. 1988) ("The term 'transaction' is to be interpreted flexibly and may comprehend a series of related occurrences."). The Court of Appeals has affirmed that "[w]hen the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate." Graham, 275 F.3d at 512 (citing Wirsing, 719 F.2d at 863). While Rule 8 "should be construed in favor of joinder," failure to meet the requirements of Rule 8 constitutes "misjoinder as a matter of law." United States v. Chavis, 296 F.3d 450, 456 (6th Cir. 2002) (quoting United States v. Hatcher, 680 F.2d 438, 440 (6th Cir. 1982)). Whether joinder is proper under Rule 8(a) is determined by the allegations on the face of the indictment. United States v. Frost, 125 F.3d 346, 389 (6th Cir. 1997).

"[D]rugs and guns are frequently connected in particular criminal activities, which would permit joinder under the 'the same act or transaction' or the 'common scheme or plan' prongs of Rule 8(a)." Chavis, 296 F.3d at 458. In cases where firearms have been discovered along with evidence of a defendant's drug trafficking, "joinder of firearms and weapons charges has been approved due to the natural inferences that may be drawn from the contemporaneous possession of guns and drugs . . . the firearm is an indication of drug activity, and participation in drug trafficking supplies a motive for having the gun." Id. (quoting United States v. Hubbard, 61 F.3d 1261, 1270 (7th Cir. 1995)). Because guns are tools of the drug trade, joinder can be appropriate when guns are used in connection with drug offenses or when both guns and drugs are uncovered

8

in the same search. Chavis, 296 F.3d at 459; see also, e.g., Graham, 275 F.3d at 512 (approving joinder where the indictment alleged that drugs were used to finance weapons purchases, defendant was charged with possessing firearms in connection with narcotics, and testimony showed offenses occurred in same time frame); "In such circumstances, the possession of a firearm can be characterized as part of 'the same act or transaction' or as an act 'constituting part[ ] of a common scheme or plan' as the narcotics crime, because the firearm is an instrument used to accomplish narcotics trafficking." Chavis, 296 F.3d at 459 (citing United States v. Price, 265 F.3d 1097, 1105 (10th Cir. 2001) (affirming joinder "under the theory that the firearms and the drugs were being used in pursuit of a common unlawful activity"). On the other hand, joinder is not appropriate simply because the terms "drugs" and "guns" are invoked; there must still be logical and temporal connections drawn between the alleged offenses. See, e.g., Chavis, 296 F.3d at 458 (concluding joinder of alleged drug and firearms offenses was not proper where they occurred two years apart and were not connected by any thread); Hubbard, 61 F.3d at 1270 (holding joinder of drug and weapons charges was improper where they were based on unrelated events that occurred seventeen months apart).

Here, aside from Count Two, the charged offenses are of the same character and reflect Defendant's alleged underlying criminal scheme to distribute drugs and utilize his residence and the tools of the trade, including firearms, in that effort. The Government alleges that the events surrounding the July 25-related charges were part of Defendant's drug distribution and related gang activity. The Government further alleges that the events on August 7-8, 2017 (including witness tampering) were part of Defendant's plan to perpetuate that drug distribution scheme. Finally, the Government alleges that Defendant utilized his residence in this illegal plan. Evidence of Defendant's drug distribution thus girds all the charges. Furthermore, the alleged crimes are

directly related to the Government's asserted reason for Defendant's alleged intimidation attack on Victim A. The Government represents that it will prove (and it is logical to understand why it would be so) that Defendant's use of his residence (where weapons, drugs, and contraband were found) was significant and important to his drug distribution on July 25, 2017 and possession on August 8, 2017, providing him a safe place to store and sell drugs.[1]

Accordingly, to say the Superseding Indictment is a collection of separate and unrelated transactions is both an impermissibly narrow reading of the charges and a naïve understanding of the Government's anticipated case. The Court concludes that all of the counts, aside from Count Two, spring from the same factual background, are logically related, encompass interrelated offenses tied to the underlying alleged scheme of Defendant's alleged drug distribution, and require a fair amount of overlapping proof. As charged, this case offers significant advantages in terms of judicial efficiency, which the Sixth Circuit has identified as "the predominant consideration" in assessing the propriety of joinder. Defendant has not met his burden of establishing that Counts One, Three, Four, Five, Six, Seven, Eight, and Nine of the Superseding Indictment were improperly joined under Rule 8(a). To the extent there may be any prejudicial effect from the "spillover" of evidence adduced in support of different counts of the Superseding Indictment, the Court will consider an appropriate cautionary instruction. See Chavis, 296 F.3d at 461 (affirming use of proper curative instructions); United States v. Frost, 125 F.3d 346, 391 (6th Cir. 1997) ("The District Court further minimized any prejudice by instructing the jury to consider

---

[1] Defendant makes some argument as to the *weight* of the Government's evidence on the drug premises charge. That is not the proper inquiry on a motion to sever. Defendant has not brought a motion to dismiss that Count. Whether the Government can meet its burden of proving that drug distribution was a significant or important reason for which Defendant's house was rented or used is a question for trial. However, there is no evidence to support Defendant's claim that this Count was included for the sole purpose of circumventing Rule 8. Regardless, the existence of this Count is not the sole reason for the Court's decision.

only the evidence against each defendant on each charge . . . without regard to the other charges or defendants.").

There remains Count Two of the Superseding Indictment, which charges Defendant with being an alien unlawfully present in the United States. While on first blush this charge does not necessarily appear to "fit" with the drug distribution and firearms charges, on closer examination it requires the same proof as Count One, which charges Defendant with being an alien unlawfully in possession of a firearm. Specifically, both Counts One and Two require that the Government prove that Defendant is unlawfully present in the United States. Thus, including Count Two (1) makes sense from the standpoint of efficiency and judicial economy, and (2) will not prejudice Defendant because proof of his unlawful presence in the United States will be part of the Government's case in any event. Again, the Court will consider an appropriate limiting instruction to the jury to consider each count individually, and that guilt on one count (e.g., Count One) does not necessarily mean guilt on another (e.g., Count Two).

This is not the end of the analysis. Under Federal Rule of Criminal Procedure 14(a), a district court may order separate trials for a defendant facing a multi-count indictment if the "joinder of offenses . . . appears to prejudice a defendant. . . ." Rule 14 is "permissive, not mandatory." United States v. James, 496 F. App'x 541, 546 (6th Cir. 2012). However, severance is required only when there is a serious risk of undue prejudice. See Zafiro v. United States, 506 U.S. 534, 539 (1993) (holding that a Rule 14(a) movant must prove that joinder would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence); James, 496 F. App'x at 546. "In determining whether a defendant [will suffer] prejudice, courts consider such factors as whether spillover evidence would incite or arouse the jury to convict on the remaining counts, whether the evidence was intertwined, the similarities and differences

11

between the evidence, the strength of the government's case, and the ability of the jury to separate the evidence." United States v. Dale, 429 F. App'x 576, 578 (6th Cir. 2011).

As discussed above, the charges against Defendant are legally and factually intertwined as related to his drug distribution scheme and its perpetuation. The charges flow logically from gang-related drug distribution, in particular the witness tampering and firearms allegations. The Government represents that it has a strong evidentiary case that is supported by video surveillance and photographic evidence, the direct testimony of witnesses and victims, and evidence of contraband seized at Defendant's home. Nevertheless, Defendant is not charged with so many counts that the jury will be overwhelmed with evidence. While the nature of Defendant's alleged activities, if proven, certainly has the potential to arouse a desire for justice in the jury, the Court does not find that "spillover" evidence would incite the jury to disregard its instructions and convict Defendant on other charges. This is particularly so because the Government's case, while supported by evidence of an ongoing drug distribution scheme, is in significant part built around two discrete incidents/time frames (July 25 and August 7 and 8) that are easily distinguishable. Defendant does not have the right to individual trials based on individual weapons possessed or individual drug transactions simply because he asserts that each will "prejudice" the jury's consideration of the other; rather, Defendant must show "substantial prejudice." He has not done so. "[A]bsent a showing of substantial prejudice, spillover of evidence from one [count] to another does not require severance [under Rule 14]." Hang Le-Thy Tran, 433 F.3d at 478 (citing United States v. Johnson, 763 F.2d 773, 777 (6th Cir. 1985)).

In sum, the Court concludes that severance is not appropriate under Rule 8 or 14. The Sixth Circuit presumes that the jury is capable of "sorting out the evidence and considering each count . . . separately." United States v. Swift, 809 F.2d 320, 323 (6th Cir. 1987). Here, the Court believes

that the jury will be able to "properly compartmentalize the evidence" related to each of the charges. United States v. Cody, 498 F.3d 582, 587 (6th Cir. 2007). "Even if there is some potential for jury confusion, it is small and does not outweigh 'society's need for speedy and efficient trials.'" Swift, 809 F.2d at 323 (quoting United States v. Gallo, 763 F.2d 1504, 1525 (6th Cir. 1985)). The jury will be able to make a reliable judgment about Defendant's guilt or innocence on each count of the Superseding Indictment. Accordingly, the Motion to Sever (Doc. No. 75) will be denied.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE