# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **NO. 3:17-cr-00164-1** |
| ) | **CHIEF JUDGE CRENSHAW** |
| **GERSON SERRANO-RAMIREZ,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Suppress (Doc. No. 74), that is opposed by the Government (Doc. No. 79).

On August 3, 2017, Metropolitan Nashville Police Department investigators interviewed a victim of a brutal assault that occurred on July 25, 2017. During the interview, the victim identified himself and told investigators a complete story about events that allegedly began with the victim asking Defendant to tone down his MS13-related activities and resulted in his being kidnapped and assaulted by Defendant at Defendant's home. The Affidavit in Support of Search Warrant ("Affidavit") submitted to Judge John Holt of the Davidson County General Sessions Court, dated August 4, 2017, contains the details of the victim's report to MNPD:

> On 7/24/2017, [Victim][1] called the suspect, Gerson Serrano, to talk about an incident which had occurred approximately one month prior in which [Victim] who worked as a DJ at Billiard Bolo had asked Serrano, who is an acquaintance of [Victim], to tone down his behavior in the club as Serrano and his friends, whom [Victim] advises are members of the gang MS13, were intimidating and driving away customers. On 7/25/2017 [Victim] went to 88 Palm Tree Ct. Antioch, TN 37013, which he knows to be Serrano's residence, to talk further with Serrano about the incident. [Victim]

---
[1] The Court is utilizing a pseudonym for the safety of this witness.

and Serrano drank several beers together when Serrano began to accuse [Victim] of being an informant for the police. Serrano pulled [Victim's] shirt off believing he would find a surveillance wire. Serrano then retrieved an assault-style rifle from one of the bedrooms of the residence and began to strike [Victim] with the buttstock of the weapon, while ordering [Victim] to sit down. Serrano then placed a phone call to an unknown individual who arrived at the residence approximately 15-20 minutes later. Upon his arrival the unknown male, who was described as a white male between 35-40 years old, was ordered by Serrano to tie [Victim] up. The unknown male proceeded tied [Victim] up with a USB cable, delivering knee strikes to body as he did so. After he finished restraining [Victim], the unknown male left the location. Serrano continued to accuse [Victim] about being a police informant and told [Victim] that he needed to learn to respect MS13. Serrano placed a plastic bag over [Victim's] head to suffocate him and continued to strike [Victim] with the rifle. As [Victim] was almost to the point of losing consciousness, Serrano removed the bag and began to spray bleach into [Victim's] face and eyes. Serrano then used a pliers to squeeze [Victim's] fingers while continuing to question [Victim] and accuse him of working with the police. Serrano then allowed [Victim] to leave the location, however, [Serrano] took [Victim's] iPhone 6, his wallet, his shirt which was described as a blue polo style shirt with an Aeropostale logo and his brown Sperry shoes. On 8/3/2017, [Victim] was interviewed by detectives and positively identified Gerson Serrano from a photo lineup.

(Doc. No. 79-1 at 3.) Law enforcement sought to search Defendant's residence located at 88 Palm Tree Court, Antioch, Tennessee 37013 for evidence of the crimes of aggravated kidnapping and aggravated robbery under Tennessee law, specifically, for photographs of the scene, firearms and ammunition, cell phones, clothing, wallets, and any other related evidence. Id. Judge Holt issued the search warrant.

On August 8, 2017, MNPD investigators, along with agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and Homeland Security Investigations executed the search warrant at the Defendant's residence. During the search, officers located and seized an AK-47 style rifle, over 450 rounds of various types of ammunition, three cellular phones, a small bag of cocaine, a bulletproof vest, a small amount of marijuana, digital scales, and a digital surveillance

camera hard drive. Investigators also located and photographed the victim's shoe under a sofa in the living room.[2]

Defendant argues that the search warrant was invalid because the Affidavit was based upon information provided by a confidential informant, and law enforcement did not sufficiently consider the veracity, reliability, and basis of knowledge for that information. (Doc. No. 74 at 4-5.) Defendant contends that the issuing judge should have required substantial independent police corroboration to support a finding that the allegations in the Affidavit were credible. (Id. at 5.) Defendant concludes that the issuing judge did not, and could not, properly assess the veracity and reliability of the affiant and, as a result, the Affidavit could not serve as the proper basis for the issuance of a search warrant.[3] (Id. at 6.)

A judge's determination of probable cause is entitled to "great deference." United States v. Dotson, 49 F.3d 227, 229-30 (6th Cir. 1995). Nonetheless, the Court conducts a review to determine whether there is substantial evidence in the record to support a judge's decision to issue the warrant. Massachusetts v. Upton, 466 U.S. 727, 728 (1984). The Fourth Amendment begins: "The right of the people to be secure in their persons, houses, papers, and effects, against

---

[2] Two subsequent search warrants were sought and obtained stemming from the original search. On August 14, 2017, the ATF applied for and received a search warrant for the Defendant's DNA from U.S. Magistrate Judge Barbara D. Holmes. On August 16, 2017, agents executed the search warrant and retrieved a swab from Defendant to be compared with any potential DNA from the contraband seized from the Defendant's home. On September 5, 2017, the ATF applied for and received a search warrant from U.S. Magistrate Judge Alistair Newbern for the contents of a surveillance system seized from the Defendant's home on August 8, 2017. Surveillance footage from July 24 and July 25, 2017, allegedly shows the assault on the victim that lasted several hours. According to the Government, additional footage from the surveillance camera has allegedly captured Defendant's drug distribution activity.

[3] Defendant also contends that the results of the search warrants dated August 14th, for DNA, and September 5th, of the hard drive, were "fruit of the poisonous tree" because they related to items seized as a result of the execution of the initial search warrant. (Doc. No. 74 at 7.)

unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant." Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 653 (1995). Under the Fourth Amendment, a search warrant may be issued only "upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the . . . things to be seized." U.S. Const. amend. IV. Probable cause exists if "the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." Peffer v. Stephens, 880 F.3d 256, 263 (6th Cir. 2018) (quoting United States v. Besase, 521 F.2d 1306, 1307 (6th Cir. 1975)), pet. for cert. filed, No. 17-1587 (S. Ct. May 23, 2018); see also United States v. Hoang, 487 F. App'x 239, 240 (6th Cir. 2012) ("Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place.").

"The Fourth Amendment does not require probable cause to believe evidence will conclusively establish a fact before permitting a search, but only 'probable cause . . . to believe that the evidence sought will aid in a particular apprehension or conviction.'" Messerschmidt v. Millender, 565 U.S. 535, 552 n.7 (2012) (alteration in original) (quoting Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 307 (1967)). Probable cause is determined by examining the totality of the circumstances, and it must be given a "practical, nontechnical" construction. United States v. Calloway, 116 F.3d 1129, 1132 (6th Cir. 1997) (citing Illinois v. Gates, 462 U.S. 213, 230-31 (1983)). Elements to consider in evaluating the totality of circumstances can include both (1) "facts establishing either the general veracity of [an] informant or the specific reliability of his report in the particular case" and (2) an informant's basis of knowledge, including "the particular means by

which he came by the information given in his report." <u>Massachusetts v. Upton</u>, 466 U.S. 727, 730 (1984).

Finally, a search warrant is directed "not [at] the person against whom the evidence is to be used, but rather [at] the place to be searched." <u>Besase</u>, 521 F.2d at 1308; <u>see also</u> <u>United States v. Baylis</u>, 475 F. App'x 595, 597 (6th Cir. 2012) (same). The affidavit supporting a warrant must establish "a nexus between the place to be searched and the evidence to be sought." <u>United States v. Carpenter</u>, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (internal quotation marks omitted). "The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." <u>United States v. Frazier</u>, 423 F.3d 526, 532 (6th Cir. 2005) (quoting <u>Zurcher v. Stanford Daily</u>, 436 U.S. 547, 556 (1978)).

Put succinctly, then, the issue before the Court, is whether the "totality of the circumstances" supports the conclusion that there was a "substantial basis" to find that a search of Defendant's home "would uncover evidence of wrongdoing. . . ." <u>Gates</u>, 462 U.S. at 236. The basis for the search warrant is the statements given by the victim when he was interviewed by the MNPD on August 3rd, 2017, which were memorialized in the Affidavit. The victim was not, as Defendant implies, a "confidential informant" or "anonymous tipster," disconnected from the events of this case and offering second-hand or hearsay information about Defendant in an attempt to inculpate him. <u>See</u> <u>United States v. Helton</u>, 314 F.3d 812, 819 (6th Cir. 2003) (differentiating between direct witness observations and that of "informants" and explaining that, "[w]hen confronted with hearsay information from a confidential informant or an anonymous tipster, a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information"). Instead, the "informant" here

was the *alleged victim* of Defendant's kidnapping, beating, and robbery, who had *direct and personal observations of those crimes allegedly committed by Defendant at his residence*. <u>See United States v. McCraven</u>, 401 F.3d 693, 697 (6th Cir. 2005) (explaining that an informant's reliability may be established by "a detailed description of what the informant observed first-hand, or the willingness of the informant to reveal his or her name"); <u>United States v. Allen</u>, 211 F.3d 970, 972-76 (6th Cir. 2000) (en banc) (same); <u>compare with</u> <u>United States v. Christian</u>, 893 F.3d 846, 856 (6th Cir. 2018) (criticizing search warrant based in part upon tips from unknown number of unnamed subjects on unknown dates in unknown contexts with no indicia of reliability, veracity, or factual basis).

To be more specific, here, the victim's name is repeated throughout the Affidavit. (Doc. No. 79-1 at 3 (redacted).) The Affidavit contains dates, personal details about the victim and alleged perpetrator, information about the relationship between the two individuals, specific details about the alleged kidnapping and assault of the victim including the use of an assault rifle and bleach during the attack, a specific description of the victim's property that was allegedly stolen and located within the residence to be searched, the location of the residence identified by the victim, and a picture of the residence.[4] In essence, the Affidavit exhibited on its face "the probability . . . of criminal activity." <u>United States v. Pelham</u>, 801 F.2d 875, 878 (6th Cir. 1986). Where, as here, "a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search for that evidence." <u>Id</u>. The issuing judge could have reviewed the Affidavit containing detailed information from the named alleged victim/witness with personal knowledge

---

[4] Furthermore, the search warrant was targeted to evidence related to aggravated kidnapping and aggravated robbery, specifically photographs of the scene, firearms and ammunition, cellphones, clothing, wallets, and other evidence related to these offenses.

of evidence in Defendant's residence and reasonably concluded that further corroboration was not necessary and that a substantial basis for probable cause existed. "[S]o long as the [issuing judge] had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more."[5] Pelham, 801 F.3d at 877-88 (quoting Gates, 462 U.S. at 236).

The Motion to Suppress (Doc. No. 74) is therefore **DENIED**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] Because the original search warrant was lawful, the subsequent searches of evidence seized pursuant to that search warrant were also lawful.